# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Ralph Angasan, Sr., *et al.*, ) <br> Plaintiffs, ) <br> vs. ) <br> United States of America, Department ) <br> of the Interior, National Park Service ) <br> Defendant. ) | 3:15-cv-00195 JWS <br><br> ORDER AND OPINION <br><br> [Re: Motion at Docket 21] |

## I. MOTION PRESENTED

At docket 21 defendant United States of America, Department of the Interior, National Park Service ("the Park Service") moves to dismiss the complaint of plaintiffs Ralph Angasan, Sr.; Vera Angasan; Fred T. Angasan, Sr.; Mary Jane Nielsen; Trefon Angasan, Jr.; Lydia Emory; Viola Savo; Val Angasan, Sr.; Martin Angasan, Sr.; Steven Angasan, Sr.; and Anishia Elbie (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiffs oppose at docket 28; the Park Service replies at docket 32. Oral argument was heard on May 2, 2016.

## II. BACKGROUND

This case presents a dispute concerning the construction of a road at Brooks Camp in the Katmai National Park and Preserve. Plaintiffs are the heirs of Palagia

Melgenak, who established first use of land in the vicinity of Brooks Camp in the late 1800s.[1]  Following litigation with the United States, Plaintiffs were granted the land identified as United States Survey No. 7623 as a Native allotment under the Alaska Native Allotment Act.[2]  Pursuant to a sales agreement ("Sales Agreement"), Plaintiffs then sold a portion of their allotment back to the United States (Lot 1) and granted the United States a conservation easement ("Conservation Easement" or "Easement") over the remaining land (Lots 2 and 3).[3]  The land subject to the Conservation Easement is referred to as the "Protected Property."[4]  A portion of the Protected Property (Lot 2) is designated as the "Exclusive Use Area," over which Plaintiffs have retained the right of "exclusive, non-commercial use."[5]

The Conservation Easement has three stated purposes: (1) "to preserve and protect the predominantly natural landscape and the wildlife and other park resources and values on the Protected Property;" (2) "to limit the impacts on the surrounding park lands and resources as a result of the use of the Protected Property;" and (3) "to increase opportunities for access by park visitors."[6]  Section 2 of the Easement outlines the specific rights that Plaintiffs conveyed to the United States.[7]

---

[1] Doc. 1 at 3 ¶ 7.

[2] Alaska Native Allotment Act of 1906, 34 Stat. 197, ch. 2469 (1906) (codified as amended at 43 U.S.C. §§ 270-1 to -3 (1970)).  "Although the Allotment Act was repealed in 1971 by the Alaska Native Claims Settlement Act ('ANCSA'), 43 U.S.C. § 1617, ANCSA contained a savings clause for applications pending on the date of the repeal of the Allotment Act.  Id. § 1617(a)." *Akootchook v. U.S., Dep't of the Interior*, 747 F.2d 1316, 1318 (9th Cir. 1984).

[3] Doc. 1-1 at 1-17.

[4] Doc. 1-2 at 2.

[5] *Id.* at 4.

[6] *Id.*

[7] *Id.* at 2-3.

The United States' ability to develop the land is restricted under the parties' agreements. With regard to Lot 1, Section (2)(a)(iv) of the Sales Agreement provides that the Park Service must "first consult with [Plaintiffs] concerning all proposed developments [and] improvements."[8] This restriction resembles the Lot 3 restriction found in Section 2(D)(2) of the Easement, which states that "new development" in Lot 3 shall not occur without the Park Service "first consulting and obtaining and considering the views of the" Plaintiffs.[9]

Plaintiffs allege that the Park Service violated the two above restrictions when it built a road that commences on Lot 1 "and passes through [Lot 3] to a barge loading zone directly adjacent to Lot 3"[10] without first contacting or consulting with Plaintiffs.[11] Their three causes of action seek the following relief: (1) a declaratory judgment stating that the Park Service's conduct is wrongful;[12] (2) an injunction prohibiting the Park Service from "using or entering upon the road" and requiring it to "promptly comply in all respects [with] the Conservation Easement;"[13] and (3) restitution damages.[14] Additionally, the complaint's prayer for relief seeks an injunction requiring the Park Service to restore the Protected Property at its own expense.[15]

---

[8] Doc. 1-1 at 6.

[9] *Id.* at 27. The Park Service's ability to develop Lot 2, the Exclusive Use Area, is more restricted. Section 2(D)(1) of the Easement provides that the Park Service may not develop Lot 2 "without the express written permission of the [Plaintiffs], which permission may be withheld for any reason or no reason whatsoever." *Id.*

[10] Doc. 1 at 7 ¶ 27.

[11] *Id.* at 8 ¶ 29.

[12] *Id.* ¶ 32.

[13] *Id.* at 9 ¶¶ 37-38.

[14] *Id.* at 11 ¶ 44.

[15] *Id.* ¶ 3.

# III. STANDARDS OF REVIEW

## A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[16]

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual."[17] Where the defendant brings a facial attack on the subject matter of the district court, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor.[18] The court does not, however, accept the truth of legal conclusions cast in the form of factual allegations.[19]

"With a factual Rule 12(b)(1) attack, however, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiffs' allegations."[20]

## B. Rule 12(b)(6)

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[21] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

---

[16] *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

[17] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[18] *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[19] *Id.*

[20] *White*, 227 F.3d at 1242 (9th Cir. 2000) (citations omitted).

[21] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

opposing party to defend itself effectively."[22] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[23] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[24]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[25] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[27] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[28] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[29]

Ordinarily, if "matters out side the pleadings are "presented to and not excluded by the court," a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56" and the parties "must be given a reasonable opportunity to present all

---

[22]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[23]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[24]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[25]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[26]*Id.*

[27]*Id.* (citing *Twombly*, 550 U.S. at 556).

[28]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[29]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

the material that is pertinent to the motion."[30] There are two exceptions to this rule, however. "First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."[31] Second, "a court may take judicial notice of 'matters of public record.'"[32]

## IV. DISCUSSION

**A.    The Park Service's Jurisdictional Attacks**

Paragraph four of Plaintiffs' complaint asserts numerous potential bases for this court's jurisdiction.[33] In response to the Park Service's jurisdictional attacks, Plaintiffs defend two of them: Public Law 105-277 and the Quiet Title Act ("QTA").[34]

### 1.    Public Law 105-277

On October 21, 1998, President Clinton signed House Bill 4328 into law, which became Public Law Number 105-277 (hereinafter "the Act"). Title I § 135 of the Act, which was codified as a note to 16 U.S.C. § 410hh-1, "authorize[s], ratifie[s] and confirm[s]" the Sales Agreement's "terms, conditions, procedures, covenants, reservations, and other provisions" and declares that its provisions "set forth the obligations and commitments of the United States and all other signatories, as a matter of [f]ederal law."[35] The Sales Agreement expressly incorporates the exhibits attached thereto as part of the Agreement itself,[36] including Exhibit II: the Conservation

---

[30]Fed. R. Civ. P. 12(d).

[31]*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation omitted).

[32]*Id*. at 688-89 (quoting Fed. R. Evid. 201).

[33]Doc. 1 at 3 ¶ 4.

[34]28 U.S.C. § 2409a.

[35]Pub. L. No. 105-277, Title I § 135(a)(1)(A), 112 Stat. 2681-264 (1998).

[36]Doc. 1-1 at 12.

Easement Deed Form.[37] Section 7 to this Exhibit, titled "Remedies and Enforcement," provides in pertinent part as follows:

> If either Party determines that an activity or event of noncompliance with the terms and conditions herein set forth has occurred, the non-breaching Party shall give notice to the party alleged in breach and demand corrective action sufficient to abate such activity or event of non-compliance and to restore the Protected Property to its condition prior to such event or activity at the breaching Party's own expense. Failure by the Party then in breach to discontinue, abate or take such other corrective action as may be demanded by the non-breaching Party, shall entitle the non-breaching Party, at its discretion, *to bring an action at law or in equity in a court of competent jurisdiction to enforce the terms of this Easement*, to obtain injunctive relief, to require restoration of the Protected Property at the breaching Party's own expense, and to recover any damages arising from such non-compliance, including the reasonable costs of enforcement.[38]

In sum, the Act bestows the characteristics of federal law upon the parties' rights and obligations under the Easement and unequivocally waives the United States' sovereign immunity with regard to civil actions brought to enforce those rights and obligations. The district courts have jurisdiction of such actions under 28 U.S.C. § 1331.

The Park Service's arguments to the contrary are unpersuasive. The Park Service argues that this court lacks jurisdiction over Plaintiffs' claims because the Act does not contain an effective sovereign immunity waiver. It correctly notes that sovereign immunity waivers may not be implied;[39] they must be expressed unequivocally to be effective and they must be construed strictly in favor of the sovereign.[40] But the Park Service misses the mark in arguing that the Act's waiver is implicit because it is found in the Easement and not the text of the Act itself.[41] The plain language of the Act does not merely imply that the provisions of the Sales

---

[37] *Id.* at 25-40.

[38] *Id.* at 32 (emphasis added).

[39] *United States v. King*, 395 U.S. 1, 4 (1969).

[40] *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992).

[41] Doc. 32 at 5-6.

-7-

Agreement, including the waiver of sovereign immunity, are adopted as federal law; it directly and unambiguously expresses so.

The Park Service next argues that Plaintiffs waived this court's federal question jurisdiction by abandoning their complaint's assertion of such jurisdiction[42] in their opposition. Plaintiffs do not abandon their federal question jurisdiction argument in their opposition because Plaintiffs maintain that the Park Service has violated the Act, a federal law.

The Park Service is correct, however, that the Act's sovereign immunity waiver applies only to claims that relate to the Conservation Easement and not the land that was conveyed in fee to the United States (Lot 1). It is necessary, therefore, to determine whether this court has jurisdiction of Plaintiffs' Lot 1 claims under the other statutes upon which Plaintiffs rely.

### 2. The QTA does not apply because title to real property is not in dispute

Under the QTA, "the United States, subject to certain exceptions, has waived its sovereign immunity and has permitted plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest."[43] "[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property."[44] If either condition is not met, the QTA does not apply and the district court lacks

---

[42]Doc. 1 at 3 ¶ 4 (citing 28 U.S.C. § 1331).

[43]*Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 275-76 (1983) (citing Act of Oct. 25, 1972, Pub. L. No. 92-562, 86 Stat. 1176, codified at 28 U.S.C. § 2409a, 28 U.S.C. § 1346(f), and 28 U.S.C. § 1402(d)).

[44]*Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999).

jurisdiction.[45] Because the parties agree that the United States claims an interest in the property at issue in this case, only the second condition is relevant here.

Plaintiffs argue that they are disputing title to Lot 1 because each party claims "an interest in the Conservation Easement which conflicts with the other party's interest."[46] This is not the same thing as a dispute regarding *the title* to Lot 1, which Plaintiffs do not dispute is owned free and clear by the United States. Because Plaintiffs do not allege that the title to Lot 1 is disputed, or that there is a current or future cloud on that title, the QTA is inapplicable here.[47] As the Ninth Circuit held in *Robinson*, "a suit that does not challenge title but instead concerns the use of land as to which title is not disputed can sound in tort or contract and not come within the scope of the QTA."[48]

### 3. 25 U.S.C. § 345 does not give this court jurisdiction

In addition to the statutes that Plaintiffs cite in their complaint, Plaintiffs also argue that this court has jurisdiction of their Lot 1 claims under 25 U.S.C. § 345. This argument lacks merit because § 345 waives the United States' sovereign immunity only with respect to claims seeking an original allotment, not post-acquisition claims[49] such as those at issue here.

---

[45]*Id.*

[46]Doc. 28 at 6-7.

[47]*See Robinson v. United States*, 586 F.3d 683, 687 (9th Cir. 2009) ("Congress did not intend to limit the waiver solely to the traditional 'quiet title' cause of action; instead Congress was more generally concerned with interests that 'cloud title,' i.e., interests that raise questions that may affect the claim of title and pose problems in the future.").

[48]*Id.* at 688.

[49]*Jachetta v. United States*, 653 F.3d 898, 906 (9th Cir. 2011).

B.  **The Park Service's Rule 12(b)(6) Arguments**

1. **The court cannot decide fact questions in the Park Service's favor**

The Park Service argues that Plaintiffs' allegations regarding Lot 3 fail to state a claim because Section 2(D) of the Easement requires consultation with Plaintiffs only in the event of "new development,"[50] which is defined to exclude the "replacement of a similar size and character of improvements that exist[ed] on the Protected Property" when the Easement was conveyed.[51] The road at issue here qualifies under this exclusion, the Park Service argues, because "a road and barge facility already existed on Lot 1 and along the shore line of Lot 3" when the Easement was granted.[52] Relatedly, the Park Service argues that the road construction was permissible under Section 2(E) of the Easement, which grants the Park Service the right to "replace the existing road . . . on the Protected Property."[53]

The court must reject the Park Service's arguments at the motion to dismiss stage. The complaint alleges that road is a new development,[54] not a replacement of the old road that is similar in size and character. Questions of fact preclude dismissal.

2. **Plaintiffs' first cause of action fails to state a claim for violations of the Alaska Native Allotment Act**

Plaintiffs' declaratory judgment claim seeks a declaration that the Park Service's

> wrongful conduct, including but not limited to its misleading Final Environmental Impact Statement and its failure to consult and obtain and consider the views of the Grantors constitute a breach of trust obligations owed to Plaintiffs under [The Alaska Native Allotment Act of 1906 ("Allotment Act"),] 43 U.S.C. § 270.1, et seq., further explicated in the Sales Agreement, as authorized, approved and ratified by an Act of

---

[50]Doc. 24 at 16.

[51]Doc. 1-2 at 3.

[52]*Id.* at 17.

[53]*Id.* at 3.

[54]*See, e.g.,* Doc. 1 at 5 ¶ 19 (stating that the Park Service was planning to "construct" the road).

-10-

Congress and the terms and conditions of the Grant of Conservation Easement, as well as in [sic] violation of 25 C.F.R. § 169.

The Park Service next argues that Plaintiffs' "unclear" first cause of action fails to state a claim that the Park Service's actions violate its trust obligations under the Allotment Act or violate 25 C.F.R. § 169.1, *et seq.*[55]

With regard to the Allotment Act, the Park Service speculates that Plaintiffs "must be referring . . . to the inalienable nature of allotments."[56] The Allotment Act prohibits alienation of allotments "until otherwise provided by Congress" and requires the Secretary of Interior to approve all conveyances of title to land by deed.[57] The Park service argues that these obligations were satisfied when the Easement was authorized by both Congress and the Secretary of Interior. Plaintiffs' only response to this argument is their assertion that this court has subject matter jurisdiction over their Allotment Act claim.[58] Plaintiffs have abandoned this claim.[59]

The Park Service next challenges Plaintiffs' claim for declaratory relief under the former 25 C.F.R. § 169.3(b), under which the Bureau of Indian Affairs required right-of-way applicants to obtain the landowners' and the Secretary of Interior's permission.[60] Plaintiffs argue that the Park Service violated this requirement by not obtaining such

---

[55]Doc. 24 at 18-20.

[56]*Id.* at 18-19.

[57]43 U.S.C. § 270-1 (1970). *See also* 43 C.F.R. § 2561.3(a) ("[A] native of Alaska who received an allotment under the Act, or his heirs, may with the approval of the Secretary of the Interior or his authorized representative, convey the complete title to the allotted land by deed."); *Foster v. Foster*, 883 P.2d 397, 400 (Alaska 1994); *Heffle v. State*, 633 P.2d 264, 268 (Alaska 1981).

[58]Doc. 28 at 13.

[59]*See* D.Ak. L.R. 7.1(e).

[60]25 C.F.R. § 169.3(b) (2015) ("Except as provided in paragraph (c) of this section, no right-of-way shall be granted over and across any individually owned lands . . . without the prior written consent of the owner or owners of such lands and the approval of the Secretary.") (no longer effective as of April 21, 2016).

-11-

permission before it built the new road.[61] The Park Service disagrees, arguing that Plaintiffs' and the Secretary's permission to build the road is found in Section 2(E) of the Easement. "[N]o further approval is required," it argues, "in order for the Park Service to use, maintain, restore, and replace the existing road and barge landing facility.'"[62]

At its core, the Park Service's challenge to Plaintiffs' request for relief under 25 C.F.R. § 169.3(b) depends upon resolution of the same fact questions discussed above: whether the road is either (1) a new right-of-way that requires new authorization or (2) a mere replacement of an old right-of-way that is authorized under Section 2(E) of the Easement. Questions of fact preclude dismissal at this stage of the litigation.

### 3. The complaint does not state a claim regarding the barge landing area

Contrary to Plaintiffs' assertion that the complaint states a claim that the Park Service failed to consult them regarding the construction of a barge landing facility near the Exclusive Use Area,[63] no such claim is found in the complaint. Although the complaint states that the road "increases the likelihood of trespass onto the Exclusive Use" Area,[64] this claim focuses on how the road affects their rights, not the barge landing area. If Plaintiffs wish to assert a claim that challenges the barge landing area, they will need to amend their complaint.

### V. CONCLUSION

Based on the preceding discussion, the Park Service's motion to dismiss at docket 21 is **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiffs' first cause of action is **DISMISSED** to the extent it alleges a violation of the Alaska Native

---

[61]Doc. 28 at 13.

[62]Doc. 32 at 13 (quoting Doc. 1-2 at 3).

[63]Doc. 28 at 4.

[64]Doc. 1 at 9 ¶ 35.

Allotment Act (the alleged violations of the Conservation Easement and 25 C.F.R. § 169.3(b) remain); Plaintiffs' complaint is **DISMISSED** to the extent it states claims that arise out of the Park Service's activities on Lot 1; the motion is **DENIED** in all other respects.

DATED this 4th day of May 2016.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE